# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
ALLEN SCOTT GARDNER,

            Plaintiff,

    -against-

DOMINIC ROBINSON, Shield # 6922, ROBERT
CINTRON, Shield # 3202, WILLIAM CADENA,
Shield # 989, DETECTIVE GERSH, Shield # ?,
and MELVIN MOULTRIE, Shield # 5304,

           Defendants.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER

16 Civ. 1548 (GBD) (RWL)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Allen Scott Gardner, appearing *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against Defendant Police Officers Dominic Robinson, Robert Cintron, and William Cadena, as well as Detective Gersh and Melvin Moultrie (collectively, "Defendants"). Plaintiff claims that Defendants used excessive force when they arrested him inside a police precinct interrogation room on October 13, 2015. (Compl., ECF No. 2.)

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that Plaintiff's claim should be barred by his guilty plea in state court to assaulting one of the defendant officers. (Defs.' Mot. for Summ. J., ECF No. 44; Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem."), ECF No. 48, at 7–14.) In addition, Defendants contend that their use of force was reasonable and thus not excessive because Plaintiff attacked them first, resisted arrest, and their response involved "a minimal amount of force." (Defs.' Mem. at 17.) Defendants claim in the alternative that they are entitled to qualified immunity because "it was reasonable for them to believe that they were not violating Plaintiff's rights when they grabbed his hands and arms and took him to the ground." (*Id.* at 20.) In response, Plaintiff seeks leave to take additional discovery to

oppose summary judgment. (*See* Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. ("Opp'n"), ECF No. 53, at 29.)[1]

This case was initially referred to Magistrate Judge James C. Francis IV, (ECF No. 7), before being administratively reassigned to Magistrate Judge Robert W. Lehrburger. (*See* Order dated November 2, 2017.) Presently pending before this Court is Magistrate Judge Lehrburger's Report and Recommendation dated November 22, 2017 ("Report," ECF No. 57), recommending that this Court grant Defendants' motion for summary judgment based on qualified immunity grounds and deny Plaintiff's request for leave to take additional discovery for his failure to comply with Rule 56(d) of the Federal Rules of Civil Procedure. (*Id.* at 18, 20.)

In his Report, Magistrate Judge Lehrburger advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.* at 20–21); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To date, no objections have been filed.

This Court adopts in part and rejects in part the Report and the recommendations contained therein.

## I. FACTUAL BACKGROUND

The procedural and factual background is set forth in greater detail in the Report and is incorporated by reference herein. For present purposes, however, a brief recitation of the relevant facts is warranted.

On October 13, 2015, Plaintiff's girlfriend filed a police report stating that Plaintiff had forced his way into her apartment and removed their two children. (Report at 2.) The police found Plaintiff

---

[1] Plaintiff's opposition papers are not individually numbered; the page numbers of his opposition cited herein thus refer to those automatically assigned by the court's electronic filing system.

outside the apartment and took him and the children to the precinct.[2] (*Id.*) At the precinct, Plaintiff was escorted into an interrogation room by several detectives and officers. (*Id.* at 3.) One of the officers told Plaintiff that he was "going to jail" and that they were going to "lock[] him up."[3] (*Id.* at 14.) Plaintiff objected, indicating that he had been told by a sergeant that he would not be sent to jail. Another officer then told Plaintiff that he could either "do this the easy way" or "do this the hard way." (*Id.*) Plaintiff reiterated his comments about what the sergeant had told him, to which the officers responded by leaving the room and remarking that they would be "do[ing] it the hard way then." (*Id.*)

Plaintiff removed his book bag and sat down in a chair in a corner of the room. (*Id.*) Some time later, the officers reentered the interrogation room and formed a semi-circle around him. (*Id.*) Plaintiff then took a desk and pushed it back. (*Id.*) He also took a chair and threw it behind him. (*Id.*) The officers again gave Plaintiff a choice between doing it "the easy way or the hard way," to which Plaintiff responded by telling the officers to back away from him. (*Id.*) One of the officers threw his hands up and remarked "let's go."[4] (*Id.*) Plaintiff stepped backwards, put his hands in the air, and said "[W]hat are you doing. You taking me to jail." (*Id.* at 14–15.) One of the officers then told Plaintiff to "man up" while the other officers started to "build a slow circle around Plaintiff." (*Id.* at 15.) According to the Report, the following ensued:

> One officer then "slid[] in" and punched Mr. Gardner in the face. The officer tried to grab Mr. Gardner, but Mr. Gardner resisted and

---

[2] It is not clear from the record whether Plaintiff went to the precinct voluntarily or under arrest.

[3] In setting forth the relevant facts, the Report relies almost entirely on Plaintiff's deposition testimony; it appears that Plaintiff, who was incarcerated until late 2017, never took any of the defendant officers' depositions. Nor have any of the defendant officers and detectives submitted affidavits outlining their version of events.

[4] According to Defendants, it was *Plaintiff* who raised his hands in closed fists and said "Let's get it on." (*See* Defs.' 56.1 Stmt., ECF No. 46, ¶ 8 (citing Criminal Court Complaint, Decl. of Eviana Englert dated July 14, 2017 ("Englert Decl."), Ex. O, ECF No. 47-15, at 4).)

3

> "smacked [the officer's] hands down." Another officer then punched him in the stomach. Mr. Gardner tried to grab that officer and "[b]ear hug him and bring him down," so that he would not "take the ass whooping that [he] kn[e]w they were about to give [him]." The officer pushed Mr. Gardner off, and another officer punched Mr. Gardner and brought him down. The officers forced his hands behind his head. Two officers were on Mr. Gardner's legs, and one "kept punching at [his] thigh." One officer was also "kicking down on [Mr. Gardner's] face." Mr. Gardner kept trying "to look up" and kept "trying to get [an officer] off his legs." Mr. Gardner testified that he "couldn't do too much fighting" at that point. He then started shaking, and the officers got off him, picked him up, "thr[ew him] in the chair," and handcuffed him.

(*Id.* (alteration in original) (citing Tr. of Gardner Dep., Englert Decl., Ex. T, ECF No. 47-20, at 64–76).)

After he was placed under arrest, Plaintiff was taken to the hospital where he was treated for swelling in his forehead and a contusion on his face. (Report at 3, 17.) He also complained that his wrists hurt from the handcuffs being too tight and that he felt pain in his face, ribs, and stomach.[5] (*Id.*) Several days later, Plaintiff was indicted in state court on charges of assault, resisting arrest, and obstructing governmental administration, as well as criminal trespass and contempt. (*Id.* at 3.) On June 8, 2016, Plaintiff pled guilty to one count of assault in the second degree for intending to cause serious physical injury to Defendant Robinson.[6] (*Id.*)

---

[5] At his deposition, Plaintiff claimed that the handcuffs left cuts and marks on his wrist. (Report at 19.) Although he asserted in his Rule 56.1 counterstatement that the handcuffs left scars, he provided no evidence to support that claim. (*Id.*)

[6] In moving for summary judgment, Defendants argue that Plaintiff's excessive force claim should be precluded under the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), as well as by the doctrines of collateral and judicial estoppel, because of his conviction in state court for assault in the second-degree. (*See* Defs.' Mem. at 7–14.) In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

## II. LEGAL STANDARDS

### A. Report and Recommendations

A district court may accept, reject or modify, in whole or in part, the findings and recommendations set forth within a magistrate judge's report and recommendation. *See* 28 U.S.C. § 636(b)(1)(C). The court may also receive further evidence on the matter or recommit the issue to the magistrate judge with instructions. *Id.* Where, as here, no objections to the findings or recommendations have been made, the court may adopt the report and recommendation if "there is no clear error on the face of the record." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (citation omitted). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004) (quotation marks and citations omitted).

### B. Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when "it 'might affect the outcome of the suit under the governing law.'" *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the non-moving party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. *See Morse v. Fusto*, 804 F.3d 538, 546 (2d Cir. 2015); *Niagara*, 315 F.3d at 175. The court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

## C. Qualified Immunity

"Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (citation and quotation marks omitted).[7] The doctrine of qualified immunity aims to give law

---

[7] Although qualified immunity only extends to public officials against whom federal causes of action are asserted, New York common law provides comparable immunity from state law claims unless "the officials'

6

enforcement officials "room to act with confidence in gray areas by absolving from personal liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Figueroa v. Mazza*, 825 F.3d 89, 99–100 (2d Cir. 2016) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "Officials operating under color of state law" are entitled to qualified immunity at the summary judgment stage "when they can establish that either "(1) a constitutional right was not violated or (2) the right was not clearly established at the time of the violation." *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014) (citation omitted).

### III. PLAINTIFF'S CLAIMS

The Report construed Plaintiff's *pro se* complaint as asserting two claims under Section 1983: one based upon the defendant officers' application of unreasonably tight handcuffs (the "handcuffing claim"), and one based upon their alleged use of excessive force in effecting Plaintiff's arrest inside the police precinct interrogation room (the "excessive force claim"). (*See* Report at 4–5, 18.) The Report also construed Plaintiff's complaint as asserting claims under New York law for assault and battery. (*Id.* at 19.)

The Report found no evidence to support Plaintiff's claim that the handcuffs caused him serious injury and therefore recommended that his handcuffing claim be dismissed. (*Id.* at 18–19.) As for Plaintiff's excessive force claim, the Report found that Defendants' actions were protected under the doctrine of qualified immunity since the defendant officers did not violate a clearly established right when they punched and kicked Plaintiff after he resisted arrest.[8] (*Id.* at 13–18.)

---

actions are undertaken in bad faith or without a reasonable basis." *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) (citations omitted); *see also 5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 286 (S.D.N.Y. 2009).

[8] The Report found meritless Defendants' arguments that Plaintiff's excessive force claim be precluded by virtue of his state court conviction for second-degree assault. (Report at 5–9.)

7

Finally, the Report recommended that Plaintiff's assault and battery claims be dismissed either on the merits or for want of subject matter jurisdiction in light of its finding that Plaintiff's Section 1983 claims were not viable. (*Id.* at 19.)

Having reviewed the Report for clear error, this Court adopts those portions of the Report rejecting Plaintiff's handcuffing claim. However, this Court cannot accept those portions of the Report recommending that summary judgment be granted on Plaintiff's excessive force claim based on qualified immunity.

### A. Handcuffing Claim

The Report correctly found that to the extent Plaintiff's complaint could be construed as asserting a claim based on Defendants' alleged application of unreasonably tight handcuffs, such a claim should be dismissed because the injuries Plaintiff sustained as a result were slight. *See Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015) (noting that "tight handcuffing does not constitute excessive force unless it causes injuries beyond pain and bruising" and collecting cases); *Hollins v. City of New York*, No. 10-CV-1650 (LGS), 2014 WL 836950, at *2, *9 (S.D.N.Y. Mar. 3, 2014) (granting summary judgment to defendants where the plaintiff testified that the "handcuffs caused her pain and bruising that lasted only a day" but otherwise "did not result in any lasting injuries"). Accordingly, this Court adopts that portion of the Report and dismisses Plaintiff's handcuffing claim.

### B. Excessive Force Claim[9]

As an initial matter, and with respect to Defendants' argument that Plaintiff's excessive force claim be barred under *Heck v. Humphrey*, the Report correctly concluded that Plaintiff's conviction

---

[9] As noted, the Report addresses potential assault and battery claims under New York law. (*See* Report at 19.) However, since, as the Report properly concluded, those claims rise and fall with Plaintiff's excessive force claim, this Court only addresses the excessive force claim.

8

in state court does not bar him from bringing an excessive force claim since the validity of his conviction would not be called into question were he to prevail in this action. (Report at 7.) In other words, the two are not mutually exclusive; Plaintiff may establish that Defendants' alleged use of force was excessive even if he assaulted the officers at some point during the arrest. *See Harley v. Suffolk Cty. Police Dep't*, No. 09-CV-2897 (JFB), 2012 WL 642431, at *9 (E.D.N.Y. Feb. 28, 2012).

The Report also correctly found that the issue of whether Defendants used excessive force in arresting Plaintiff was never raised, much less "actually litigated," *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.5 (1979), in the context of his criminal case in state court, thereby rendering the doctrine of collateral estoppel inapplicable. (Report at 7–8.) The Report further concluded, appropriately, that judicial estoppel is not warranted since Plaintiff's current claim of excessive force is not inconsistent with his admitting to assaulting one of the defendant police officers. (*Id.* at 8–9.)

The sole remaining issue in this case is whether Defendants used excessive force in the course of effecting Plaintiff's arrest. "The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness standard.'" *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Since the Fourth Amendment test of reasonableness is one of "objective reasonableness," the inquiry is necessarily fact specific and requires courts to balance a variety of factors, including: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Graham v. City of New York*, 928 F. Supp. 2d 610, 617–18 (E.D.N.Y. 2013) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)). Even where a plaintiff resists arrest, as here, the question in an excessive

force case is whether, under the totality of circumstances, Defendants "used more force than was necessary to subdue him." *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003); *see also* N.Y. PJI 3:4 ("One who seeks to make a lawful arrest has the right to use as much force as he reasonably believes necessary in order to make the arrest."). This principle of law is elementary and undoubtedly familiar to first-year law students and police cadets alike.

Defendants claim their actions were reasonable because Plaintiff attacked them first and their use of force was necessary to restrain him. (Defs.' Mem. at 17.) In the alternative, Defendants argue that they are entitled to qualified immunity because it was reasonable for them to believe they were not violating a clearly established constitutional right by grabbing Plaintiff's hands and arms and taking him to the ground when he resisted arrest. (*Id.* at 20.) For purposes of this summary judgment motion, the Report accepted Plaintiff's version of events and found that even if Defendants' actions were unreasonable, they are nevertheless entitled to qualified immunity since there was "no clearly established law holding that it was unlawful for an officer to punch or kick a plaintiff who is resisting arrest." (Report at 15–18.)

Based on the current record, this Court finds clear error in the magistrate judge's conclusions as to the reasonableness of Defendants' actions and their entitlement to qualified immunity. Plaintiff was arrested in an interrogation room inside the police precinct, where he presented little risk of flight or perceivable harm to the officers, who happened to outnumber him five-to-one. *Cf. Tracy*, 623 F.3d at 97–98 (finding it was objectively reasonable for the arresting officer to have struck the arrestee with a flashlight and jump on him where the officer "was operating without back up on the side of a road at night and in bad weather"). Although there is a dispute between the parties as to whether Plaintiff or the defendant officers threw the proverbial first punch—a fact which in and of itself makes summary judgment inappropriate, *see Aczel v. Labonia*, 92 F. App'x 17, 19–20 (2d Cir.

10

2004) (citations omitted)—Plaintiff testified at his deposition that he was punched in the face and in the stomach and that once he was on the ground, one officer repeatedly punched him in the thigh, while another kicked down on his face.[10] Under these circumstances, a reasonable jury could find that Defendants applied force that was greater than necessary to subdue Plaintiff.[11] Accordingly, viewing the evidence in the light most favorable to Plaintiff, this Court cannot accept the Report's conclusion that "there is no credible evidence supporting a viable excessive force claim." (Report at 11.)

Nor is it clear, without any sworn testimony from Defendants, that their actions were objectively reasonable, sufficient to give rise to a qualified immunity defense. (Report at 12 (citing *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995)).) Defendants' contention that Plaintiff assaulted the defendant officers first and that their actions were necessary to restrain him is belied by the facts as alleged by Plaintiff and set forth in the Report. Moreover, while Defendants base their claim for qualified immunity on the alleged necessity to grab Plaintiff's arms and pull him to the ground, the Report recommends granting qualified immunity for conduct far more aggressive in nature and significant in consequence.

This Court must also expressly reject the Report's conclusion that qualified immunity is appropriate because "there was, at the time, no clearly established law holding that it was unlawful for an officer to punch or kick a plaintiff who is resisting arrest." (Report at 18.) It is clearly

---

[10] On this point, Plaintiff's deposition testimony is unrebutted by any contrary deposition testimony from the defendant officers or any other admissible evidence.

[11] The Report notes that "the fact that [Plaintiff's] injuries were relatively minor, as demonstrated by the hospital records, and that the officers' injuries were more severe suggests that the force [Defendants] applied was reasonable." (Report at 17.) Yet, the injuries allegedly suffered by the defendant officers is consistent with the excessive force Plaintiff alleges they used to subdue him. (*See* Report at 17–18 (describing the officers' injuries as including "a laceration and torn right bicep tendon," "muscle strain in [the] lower back," "muscle strain in [the] upper back," "sprain in [the] right hand and a muscle strain in [the] left shoulder," and a "right wrist sprain").)

established law, understood by all police officers, that the use of more force than is necessary to make an arrest "crosse[s] the constitutional line." (Report at 18 (quoting *McKenney v. Mangino*, No. 15-CV-73, 2017 WL 1365959, at *9 (D. Me. April 12, 2017)). To punch and kick an arrestee once he is on the ground and restrained by five police officers inside the familiar terrain and relative safety of a police precinct interrogation room could, depending on the circumstances, constitute excessive force. In any event, the current record contains disputed issues of fact regarding the arrest, such as who attacked whom first and what level of force was used. It is well established that "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001) (citation omitted).

Accordingly, this Court rejects as clearly erroneous those portions of the Report recommending that this Court apply qualified immunity to Defendants' conduct and grant their motion for summary judgment.

## IV. PLAINTIFF'S REQUEST FOR LEAVE TO TAKE ADDITIONAL DISCOVERY

Plaintiff seeks leave to take additional discovery to oppose summary judgment. (Opp'n at 29.) Specifically, Plaintiff wishes to subpoena, among other things: (i) several medical professionals affiliated with the Jacobi Medical Center, where Plaintiff was transported after his arrest; (ii) the defendant officers' grand jury testimony; (iii) camera footage from the interrogation room (presumably the one in which he was placed under arrest); and (iv) the "precinct complaint log book/all entry's [sic] pertaining [to] defendants." (*Id.*) The Report recommends that this Court deny Plaintiff's request due to his failure to submit an affidavit describing the facts sought, how they are reasonably expected to raise a genuine issue of material fact, what efforts he has made to obtain them, and why his attempts have been unsuccessful, as required by Federal Rule of Civil

Procedure 56(d). (Report at 20.) This Court adopts that recommendation and denies without prejudice Plaintiff's request for leave to take additional discovery.[12]

## V. CONCLUSION

Magistrate Judge Lehrburger's Report and Recommendation is adopted in part and rejected in part to the extent indicated. Defendants' motion for summary judgment, (ECF No. 44), is DENIED.

Dated: New York, New York
      February 6, 2018

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

---

[12] Much of the discovery Plaintiff seeks seems to be, on its face, highly probative of material issues likely to arise at trial. If this case, in fact, proceeds to trial, *pro bono* counsel may be sought and assigned on Plaintiff's behalf and, if necessary, may be granted an opportunity to conduct further limited discovery to prepare for trial.